**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

DERRICK ANTHONY ROGERS,        )
                               )
            Petitioner,        )
                               )
       v.                      )        1:17CV1121
                               )
ERIK A. HOOKS,                 )
                               )
            Respondent.        )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) Respondent has moved for summary judgment both on grounds of untimeliness and on the merits. (Docket Entries 4, 5.) For the reasons that follow, the Court should grant Respondent's Motion for Summary Judgment, and dismiss the Petition as untimely.

### I. Procedural History

On June 2, 2015, in the Superior Court of Guilford County, Petitioner entered guilty pleas under North Carolina v. Alford, 400 U.S. 25 (1970), to attempt to obtain property by false pretenses, breaking or entering, larceny, conspiracy to obtain property by false pretenses, and two counts of forgery in cases 13 CRS 88646 through 88652. (See Docket Entry 1, ¶¶ 1, 2, 4-6; Docket Entry 5-2.) In accordance with the plea agreement (see Docket Entry 5-2), the trial court consolidated the offenses into one Class C felony judgment and sentenced Petitioner to 58 to 82 months' imprisonment

(see Docket Entry 1, ¶ 3; Docket Entry 5-3.)  Petitioner did not appeal.[1]

On June 24, 2016, Petitioner filed a pro se motion for preparation of a stenographic transcript in the trial court (Docket Entry 5-4), which that court denied on August 16, 2016 (Docket Entry 5-5).  Thereafter, on November 8, 2016, Petitioner filed a pro se motion for appropriate relief ("MAR"), as well as another motion for a stenographic transcript, in the trial court.  (Docket Entry 5-6; see also Docket Entry 1, ¶¶ 10, 11(a)(1)-(6).)  Petitioner subsequently filed an amended MAR ("AMAR") on January 17, 2017.  (Docket Entry 5-7.)  On January 19, 2017, the trial court denied Petitioner's MAR, motion for stenographic transcript, and AMAR.  (Docket Entry 5-8; see also Docket Entry 1, ¶ 11(a)(7).)

Petitioner filed a pro se certiorari petition with the North Carolina Court of Appeals seeking review of his MAR and AMAR's denial on March 21, 2017 (Docket Entry 5-9; Docket Entry 1, ¶ 9(a)-(f)), which that court denied on April 6, 2017 (Docket Entry 5-11).  Petitioner then filed a pro se petition for discretionary review ("PDR") (Docket Entry 5-12), as well as a pro se motion to amend the PDR (Docket Entry 5-13) in the North Carolina Supreme Court on May 16 and 24, 2017, respectively.  (See Docket Entry 1, ¶ 9(g).)

---

[1] Although Petitioner checked the "Yes" box in response to the question on the Petition regarding whether he had appealed from the judgment of conviction (see Docket Entry 1, ¶ 8), the details he provided regarding that "appeal" make clear he meant to reference his certiorari petition to the North Carolina Court of Appeals seeking review of the trial court's denial of his motion for appropriate relief (see id., ¶ 9).

2

That court dismissed the PDR on August 17, 2017. (Docket Entry 5-14.)

Petitioner filed the instant Petition on December 12, 2017. (Docket Entry 1 at 15.)[2] Respondent moved for summary judgment both on grounds of untimeliness and on the merits (Docket Entries 4, 5), and Petitioner responded in opposition (Docket Entries 9, 10). For the reasons that follow, the Court should grant Respondent's instant Motion, because Petitioner submitted his Petition outside of the one-year limitations period.

## II. Grounds for Relief

The Petition raises four grounds for relief:

(1) "[Petitioner's] Sixth Amendment [r]ight to effective assistance of counsel was violated" (Docket Entry 1, ¶ 12 (GROUND ONE));

(2) "[Petitioner's] [F]ourteenth Amendment rights of due process[] were violated by state officers, [p]rosecutor, and court" (id. ¶ 12 (GROUND TWO));

(3) the trial court "[l]ack[ed] [] [j]urisdiction due to [a] deficiently issued arrest warrant without probable cause, violating 4th Amendment" (id. ¶ 12 (GROUND THREE)); and

---

[2] Under Rule 3(d) of the Rules Governing Section 2254 Cases in United States District Courts, the Court deems the instant Petition filed on December 12, 2017, the date Petitioner signed the Petition (under penalty of perjury) as submitted to prison authorities. (See Docket Entry 1 at 15.) Throughout this document, pin citations refer to the page numbers that appear in the footer appended to documents upon their docketing in the CM/ECF system.

(4) "[Petitioner's] [F]ifth Amendment right was violated by [the] prosecutor submitting a En legis un-natural victim to [the] grand jury" (id. ¶ 12 (GROUND FOUR)).

### III. **Discussion**

Respondent seeks summary judgment on the grounds that the Petition was filed outside of the one-year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), see 28 U.S.C. § 2244(d)(1). (See Docket Entry 5 at 3-12.) In order to assess Respondent's statute of limitations argument, the Court must first determine when Petitioner's one-year period to file his Petition commenced. The United States Court of Appeals for the Fourth Circuit has explained:

> Under § 2244(d)(1)(A)-(D), the one-year limitation period begins to run from the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been

4

> discovered through the exercise of due diligence.

Green v. Johnson, 515 F.3d 290, 303-04 (4th Cir. 2008). The Court must determine timeliness on claim-by-claim basis. See Pace v. DiGuglielmo, 544 U.S. 408, 416 n.6 (2005).

Respondent contends that the Petition remains untimely under subparagraph (A), because Petitioner's conviction finalized on June 2, 2015, when "Petitioner pled guilty and received a single consolidated 58[ to ]82 month sentence, with a minimum term falling within the presumptive range of minimum terms for his Class C felony status, at prior record level I, [and] he had no right to appeal." (Docket Entry 5 at 3.)[3] Indeed, under subparagraph (A), Petitioner's conviction became final on June 2, 2015 - the day the trial court signed the judgment and commitment form in his criminal case (see Docket Entry 5-3). North Carolina limits the ability of individuals who plead guilty to appeal their convictions as a matter of right. See N.C. Gen. Stat. § 15A-1444. Here, the trial court sentenced Petitioner to a term of 58 to 82 months in prison (see Docket Entry 5-3), and the minimum sentence, 58 months, falls within the presumptive range of sentences for a Class C felony with Petitioner's prior record level of I, see N.C. Gen. Stat. § 15A-1340.17(c), (e) (version effective Dec. 1, 2011, applicable to Petitioner's 2013 offenses). Therefore, Petitioner could not

---

[3] Neither Petitioner nor Respondent argue that subparagraph (C) applies in this situation. (See Docket Entries 1, 5, 10.)

5

appeal his conviction as a matter of right.  See N.C. Gen. Stat. § 15A-1444(a1).  Petitioner's case thus became final, for purposes of calculating the limitations period, on June 2, 2015.  See Gonzalez v. Thaler, 565 U.S. 134, 149-50 (2012) (holding that a petitioner's case becomes final when the time for pursuing direct review expires); see also Hairston v. Beck, 345 F. Supp. 2d 535, 537 (M.D.N.C. 2004) (finding that, because the petitioner did not have a right to appeal, the limitation period ran from the day of judgment) (Osteen, Sr., J., adopting the recommendation of Dixon, M.J.).[4]

Petitioner's one-year period then ran, unimpeded, from June 2, 2015, until it expired 365 days later on June 1, 2016.  Petitioner did not file his instant Petition until December 12, 2017 (Docket Entry 1 at 15), over a year and a half out of time.  Moreover, although (as detailed above) Petitioner made numerous other pro se filings in various state courts from June 24, 2016, to May 24, 2017, he filed them all after the limitations period had already

---

[4] Petitioner appears to contest Respondent's position that, because Petitioner lacked a right to appeal, his judgment of conviction finalized on June 2, 2015.  Petitioner contends that the presumptive sentencing range for a Class C felony with a prior record level of I runs from 58 to 73 months and, therefore, that the state impermissibly added nine months to that range by sentencing him to 58 to 82 months.  (See Docket Entry 10 at 8; see also Docket Entry 5-3.)  Petitioner misunderstands how to interpret the state sentencing grids in question.  The trial court imposed the correct, presumptive sentence for a Class C felony with a prior record level of I.  See N.C. Gen. Stat. § 15A-1340.17(c) (2011) (reflecting presumptive range of minimum sentences for Class C felon with prior record level I as 58 to 73 months); N.C. Gen. Stat. § 15A-1340.17(e) (2011) (providing, for the minimum term of imprisonment in subsection (c) of 58 months, the corresponding maximum term of imprisonment of 82 months).  Moreover, even if Petitioner had possessed a right to appeal, the extra 14 days to appeal from his judgment of conviction would not have rendered his Petition timely.  See N.C. R. App. P. 4(a)(2) (allowing 14 days to appeal from criminal judgment).

6

run, and those belated filings could not toll the limitations period, see Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that state filings made after expiration of federal limitations period do not restart or revive that period). Therefore, Petitioner filed his claims untimely, outside of the statute of limitations.

Petitioner contends that subparagraph (D), rather than subparagraph (A), applies in his case on two bases. Under subparagraph (D), the one-year limitation begins when the factual predicate of a claim "could have been discovered through the exercise of due diligence," not upon its actual discovery. 28 U.S.C. § 2244(d)(1)(D); Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004); see also Johnson v. Polk, No. 1:07CV278, 2008 WL 199728, at *3 (M.D.N.C. Jan. 22, 2008) (unpublished) (Tilley, J., adopting recommendation of Sharp, M.J.) ("Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins to run when the petitioner knows, or through due diligence could discover, the important facts underlying his potential claim, not when he recognizes their legal significance.").

First, Petitioner contends that he could not "have discovered that a prosecutor . . . , an officer of the court, unsworn at the time of [P]etitioner[']s arrest . . ., to uphold and honor the U.S. or N.C. constitutions, while prosecuting [P]etitioner[']s case . . ., in criminal violation of N.C. criminal law 14-229, for

7

failing to lawfully file her oath of office until January 5th 2015, <u>allegedly</u> . . . would submit prevaricated information before a grand jury untrained in law, without evidence, the victim of offense testimony, or verified affidavit made by victim before a qualified judicial officer, under penalty of perjury . . . ." (Docket Entry 10 at 9-10 (emphasis added).)

Petitioner's conclusory, unsupported contentions do not establish the applicability of subparagraph (D). <u>See</u> <u>Freeman v. Zavaras</u>, 467 F. App'x 770, 775 (10th Cir. 2012) (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the alleged materials earlier); <u>Farabee v. Clarke</u>, No. 2:12-cv-76, 2013 WL 1098098, at *3 (E.D. Va. Feb. 19, 2013) (unpublished) (finding subparagraph (D) inapplicable where petitioner's "threadbare" allegations failed to explain his inability to discover the factual predicate earlier), <u>recommendation adopted</u>, 2013 WL 1098093 (E.D. Va. Mar. 13, 2013) (unpublished); <u>Norrid v. Quarterman</u>, No. 4:06-cv-403-A, 2006 WL 2970439, at *1 (N.D. Tex. Oct. 16, 2006) (unpublished) (concluding that the petitioner had the burden of demonstrating the applicability of subparagraph (D)); <u>Frazier v. Rogerson</u>, 248 F. Supp. 2d 825, 834 (N.D. Iowa 2003) (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'"). Here, Petitioner has neither identified the date on which he made these purported discoveries,

8

nor detailed how he could not have discovered the information earlier with the exercise of due diligence. (See Docket Entry 1, ¶¶ 12, 18; see also Docket Entry 10.) Furthermore, Petitioner neither made any attempt to support with evidence his statement that the prosecutor "allegedly" neglected "to lawfully file her oath of office until January 5th 2015" (Docket Entry 10 at 9 (emphasis added)), nor has Petitioner provided any facts or documents to show defects in his indictments or the grand jury procedure in his case (id.; see also Docket Entry 1, ¶¶ 12, 1). Thus, Petitioner has not carried his "burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim," DiCenzi v. Rose, 452 F.3d 465, 471 (6th Cir. 2006).

Second, Petitioner alleges that he learned, on November 1, 2016, through the "National Association for the Advancement and Elimination of Colored People Wrongfully Convicted," of the existence of Greensboro city attorney James West, who "ha[d] first hand knowledge of real estate property's abandonment, ownership, real party of interest, holder in due course, owed back taxes, and foreclosure status, of property [P]etitioner charged with attempting to falsely obtain . . . known to and withheld by the state . . . from [the] magistrate issuing [the] arrest warrant, [Petitioner] . . ., [and] the grand jury." (Docket Entry 10 at 10-11; see also id. at 17-19, Docket Entry 10-1 at 27.)

9

Again, Petitioner has failed to support his conclusory allegations regarding Greensboro city attorney James West with any supporting facts or documents; in particular, Petitioner has not explained what first hand knowledge West possessed of the property the state accused Petitioner of attempting to falsely obtain, nor how such information could form the predicate of a federal constitutional claim. (Docket Entry 10 at 10-11.) Likewise, the Court should reject Petitioner's conclusory assertion, in Exhibit K attached to his brief opposing Respondent' instant Motion, that "[d]ocumented evidence that James West withheld by the state, had first hand knowledge of property in question [a]lso included in property [the Department of Corrections] lost in [P]etitioner[']s transfer." (Docket Entry 10-1 at 27.) Petitioner has provided no evidence, beyond his own unsupported allegations, to show that the Department of Corrections lost any of his property during a prison transfer, or to establish why the "National Association for the Advancement and Elimination of Colored People Wrongfully Convicted" could not provide him with another copy of such evidence. (See Docket Entry 10 at 10-11.) Thus, Petitioner has failed to demonstrate that subparagraph (D) applies. See Freeman, 467 F. App'x at 775 (refusing to apply subparagraph (D) where petitioner failed to explain why he could not have discovered the alleged materials earlier); Farabee, 2013 WL 1098098, at *3 (finding subparagraph (D) inapplicable where petitioner's "threadbare"

10

allegations failed to explain his inability to discover the factual predicate earlier); Norrid, 2006 WL 2970439, at *1 (concluding that the petitioner had the burden of demonstrating the applicability of subparagraph (D)); Frazier, 248 F. Supp. 2d at 834 (refusing to apply subparagraph (D) when the petitioner "never identifie[d] when or how he discovered his 'new evidence'").

Petitioner additionally maintains that, "[p]ursuant to [subparagraph D] and 28 U.S.C. [§] 2244(bi)(ii), the date on which [P]etitioner[']s claim could have been realized or discovered through the exercise of due diligence was[] severely restricted by [the] state[']s impediments of no law library, no legal research assistance writing motions, limited materials, no legal copies made for [P]etitioner in state prisons, impeding, delaying, and frustrating [P]etitioner[']s exercise of due diligence, and the Guilford County prosecutor on [P]etitioner[']s case withholding exculpatory evidence, handicapping [Petitioner's] discovery in September of 2017, of tax records, that show[] [P]etitioner[']s innocence." (Docket Entry 1, ¶ 18; see also Docket Entry 10 at 11-12 (declaring that "the [s]tate is well aware of how restrictive its impediment of not providing case law research, law books or library, elements of state law violated, copies made by facilities held at or prisoner services, hinders [P]etitioner[']s ability to prepare, answer and file defense"), 13 (claiming that North Carolina Prisoner Legal Services ("NCPLS") "is not obligated or

11

taken an oath to the [c]onstitution(s), thereby having no vested interest in upholding or honoring [P]etitioner[']s constitutional rights").) Although Petitioner specifically invoked subparagraph (D) in paragraph 18 of his Petition, his argument appears to request application of the delayed accrual provisions that concern state-created impediments under subparagraph (B).[5]

Petitioner's lack of access to a law library and/or legal research assistance does not trigger application of subparagraph (B). Under well-settled Supreme Court precedent, the absence of law libraries does not violate the Constitution or any other federal law, because inmates in this state have access to NCPLS. See Bounds v. Smith, 430 U.S. 817 (1977) (ruling that state must provide either prison law libraries or assistance from persons trained in the law), overruled on other grounds, Lewis v. Casey,

---

[5] Petitioner also invoked "28 U.S.C. [§] 2244(bi)(ii)" in support of his timeliness argument (Docket Entry 1, ¶ 18); however, such a provision does not exist in the United States Code. Petitioner likely meant to rely instead on 28 U.S.C. § 2244(b)(2)(B)(i), which provides that "[a] claim present in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . the factual predicate for the claim could not have been discovered previously through the exercise of due diligence." This subsection does not apply to Petitioner, as it involves the rules surrounding second or successive Section 2254 petitions; however, its language regarding factual predicates mirrors that of subparagraph (D) of Section 2244(d)(1), the applicability of which the undersigned has addressed in the discussion that follows. In the alternative, Petitioner may have meant to rely on 28 U.S.C. § 2244(b)(2)(B)(ii), which permits second or successive Section 2254 petitions where "the facts underlying the claim, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Although this subsection does not apply to Petitioner as a first-time Section 2254 filer, it contains language similar to the "actual innocence" standard set forth in McQuiggin v. Perkins, 569 U.S. 383, 392-98, requiring a petitioner to demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. The undersigned has addressed Petitioner's actual innocence argument in the discussion that follows.

12

518 U.S. 343, 354 (1996). Although Petitioner claims that NCPLS "ha[d] no vested interest in upholding or honoring [P]etitioner[']s constitutional rights" (Docket Entry 10 at 13), Petitioner has neither alleged that he applied for and/or received representation by NCPLS, nor that such representation actually violated his constitutional rights (see id.). Furthermore, Petitioner has made no attempt to describe (1) which legal copies the state refused to provide him, and why such copies impeded his ability to file his Petition in a timely manner; and (2) why he could not obtain the publicly available tax records that show his innocence allegedly withheld by the prosecutor in September of 2017. (See Docket Entry 1, ¶ 18; see also Docket Entry 10 at 11-13, 16.) Such "conclusory allegation[s] do[ ] not suffice to show delayed accrual under section 2244(d)(1)(B)." Kiesz v. Spearman, No. CV 13-5674-PA(E), 2014 WL 462864, at *3 (C.D. Cal. Feb. 4, 2014) (unpublished).

Lastly, Petitioner asserts that, on September 8, 2017, "a firm located in Decatur[, Georgia], titled Shein and Brandenburg, given [his] name by a family member living in the state of Georgia, [] found new evidence proving [P]etitioner[']s innocence." (Docket Entry 10 at 14 (citing Docket Entry 10-1 at 29-31); see also Docket Entry 1, ¶ 18; Docket Entry 10 at 1.) According to Petitioner, "this new evidence viewed by the [United States] Supreme Court in [McQuiggin v. Perkins, 569 U.S. 383 (2013)], becomes sufficient to serve as a 'gateway' through which otherwise procedurally defaulted

13

or out of time claims can be addressed, and the state[']s argu[]ment of the one year statute of limitation on filing a federal 28 U.S.C. [§] 2254 writ of habeas corpus 18 months after the state court[']s judgment became final, can be overcomed [sic]." (Docket Entry 10 at 14-15.)

The United States Supreme Court has recognized that a showing of actual innocence may overcome the one-year statute of limitations. See McQuiggin, 569 U.S. at 392-98. However, that court also recognized that showings of actual innocence "are rare," and that a petitioner must demonstrate that no reasonable juror could vote to find the petitioner guilty beyond a reasonable doubt. Id.

In this case, Petitioner's new evidence consists of (1) an undated contract between Tamare Holding Group Limited and Dar Direct Cleaning Services (listing Petitioner as "Manager"), providing that, for a fee of $4,500, Dar Direct Cleaning Services would "clean and repair property located at 2221 Meloine Lane Greensboro, NC 27407" and "generally prepare Holding Group's properties for sale" (Docket Entry 10-1 at 29-30); and (2) a written notice of termination of that contract signed by Petitioner and dated June 27, 2013, purportedly on the grounds of "mix ups with ordered supplies" (id. at 31). However, Petitioner has utterly failed to show how either of those documents show his

14

actual innocence.  (See Docket Entry 10 at 14-15, 19.)  Simply, Petitioner does not present the "rare" case required by McQuiggin.

## IV. Conclusion

The statute of limitations bars the instant Petition.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that the Petition (Docket Entry 1) be dismissed, and that a judgment be entered dismissing this action, without issuance of a certificate of appealability.

                                       /s/ L. Patrick Auld
                                          **L. Patrick Auld**
                           **United States Magistrate Judge**

July 10, 2018